IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERNEST VASQUEZ CUADRAS,

      Plaintiff,                            No. 2:10-CV-2142 GGH

   vs.

MICHAEL J. ASTRUE,                    <u>ORDER</u>
Commissioner of
Social Security,

      Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment is granted in part, defendant's cross-motion for summary judgment is denied, the case is remanded for further proceedings under sentence four of 42 U.S.C. § 405(g), and judgment is entered for plaintiff.

<u>BACKGROUND</u>

        Plaintiff, born October 18, 1961, applied on February 26, 2007 for DIB and SSI alleging that he became disabled on October 15, 2002. (Tr. at 9, 16, 22, 142, 149.) Plaintiff

contended that he was unable to work primarily due to diabetes, stress, depression, as well as eye and feet problems. (Tr. at 162.)

In a decision dated July 15, 2009, Administrative Law Judge ("ALJ") Laura Speck Havens determined that plaintiff was not disabled. (Tr. at 17.) The ALJ made the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since October 15, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: diabetes, heart disease and depression (20 CFR 404.1520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| | 4. | The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). |
| | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: can sit 6 hours out of an 8 hour day, can stand 4 hours out of an 8 hour day and can walk 4 hours out of an 8 hour day and requires a sit/stand option to perform a job; can occasionally lift and carry 20 pounds frequently lift and carry 10 pounds; must avoid concentrated exposure to heights, moving machinery and vibrations. |
| | 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| | 7. | The claimant was born on October 18, 1961 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963). |
| | 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| | 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). |
| | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(Tr. at 11-17.) Subsequently, plaintiff requested review by the Appeals Council and submitted additional medical evidence in support of the request for review. (Tr. at 140.) On June 16, 2010, the Appeals Council denied the request for review, making the ALJ's decision the final decision

3

of the Commissioner. (Tr. at 1-5.)

ISSUES PRESENTED

Plaintiff's motion presents the following issues for review: (1) whether the ALJ erred by not incorporating plaintiff's mental limitations into the hypothetical question posed to the vocational expert; (2) whether the ALJ improperly failed to credit the opinions of the consultative examiners with respect to certain limitations; (3) whether the ALJ failed to meaningfully consider plaintiff's cardiac condition; and (4) whether the Appeals Council erred by not remanding the case in light of the additional evidence submitted by plaintiff.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

(1) Whether the ALJ erred by not incorporating plaintiff's mental limitations into the hypothetical question posed to the vocational expert

Plaintiff first argues that the ALJ failed to incorporate his moderate concentration, persistence, and pace limitations and moderate social functioning limitations into the hypothetical question to the vocational expert ("VE").

Generally, hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). In this case, the ALJ found that plaintiff had mild restrictions with respect to activities of daily living; moderate difficulties with social functioning; and moderate difficulties in regards to concentration, persistence, or pace. (Tr. at 12.) It is undisputed that these restrictions were not included in the hypothetical question. Although defendant appears to argue that these findings relate only to steps two and three, and not to steps four and five, of the sequential analysis, the ALJ did not conduct any further assessment of plaintiff's mental RFC. See SSR 96-8p, at *4.

Nevertheless, in this case, the ALJ's failure to include the above limitations was harmless, because the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. Id. at 1075. The Ninth Circuit rejected this argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert. Id. at 1077. Here, likewise, the ALJ's failure to include plaintiff's moderate mental limitations in the hypothetical question was harmless.

5

Additionally, contrary to plaintiff's argument, it appears that the ALJ in fact limited plaintiff to unskilled work.  (See Tr. at 16 ("To determine the extent to which these limitations erode the *unskilled* light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.") (emphasis added).)  It is not clear whether the later omission of the unskilled work limitation from the hypothetical was an inadvertent error.  Regardless, as plaintiff concedes, the VE actually testified to the availability of representative unskilled occupations at the light work level (information clerk, parking attendant, and cashier).  (Tr. at 41.)  Therefore, any error was harmless and remand on that basis is unnecessary.

(2) Whether the ALJ improperly failed to credit the opinions of the consultative examiners with respect to certain limitations

Plaintiff next argues that the ALJ improperly failed to credit specific limitations imposed by each of the three consultative examiners.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513(a), (e); 416.913(a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources" have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d).  No specific regulations exist for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

6

the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 830-31. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830.

First, plaintiff contends that the ALJ improperly failed to credit psychiatric consultative examiner Dr. James Scaramozzino's June 2, 2007 statement that plaintiff "does not seem to have much stamina to be able to sustain meeting all the requirements of a full-time job while simultaneously continue [sic] to work his program of recovery at this time."[3] (Tr. at 277.) This argument is unpersuasive. After a comprehensive psychiatric evaluation, Dr. Scaramozzino found that plaintiff had a good to fair ability to understand and remember short and simple, as well as detailed, instructions; a good to fair ability to maintain concentration and attention; a good ability to sustain an ordinary routine without special supervision; a good ability to interact with coworkers; and a good to fair ability to complete a normal workday/workweek without interruptions at a constant pace *from a psychological perspective.* (Tr. at 276.) The isolated statement plaintiff refers to is vague and tentative, and clearly relates to plaintiff's physical condition. As such, it is beyond the scope of Dr. Scaramozzino's evaluation of plaintiff's mental health. Furthermore, the internal medicine consultative examiner, Dr. Miguel Hernandez, who examined plaintiff around the same time, did not find that plaintiff lacked the stamina for a full-time job with appropriate limitations. (Tr. at 278-82.)[4]

Second, plaintiff argues that the ALJ ignored Dr. Lampe's comment in his March 27, 2009 report that "[w]hether or not the claimant could withstand the stress and pressures

---

[3] At the time of Dr. Scaramozzino's evaluation, plaintiff reported being a long-time drug addict who had been clean for six months and was starting to live his life as a sober person for the first time in over 20-some years. (Tr. at 273.)

[4] In any event, Dr. Scaramozzino's report is not even the most recent mental health opinion. Psychiatric consultative examiner Dr. Stefan Lampe, who examined plaintiff more recently on March 27, 2009, also made no finding suggesting that plaintiff's recovery process precluded all full-time work. (Tr. at 468-69.)

7

associated with an eight-hour workday on an ongoing basis would depend on the skills necessary." (Tr. at 469.) To the contrary, it appears that the ALJ fully credited Dr. Lampe's opinion and in fact limited plaintiff to unskilled work.[5] (Tr. at 16.) Even though that limitation was for some reason not included in the hypothetical to the VE, the VE nevertheless testified to the availability of unskilled representative occupations at the light work level. (Tr. at 41.) As discussed above, any error in omitting the restriction from the hypothetical was therefore harmless.

Third, plaintiff claims that the ALJ acknowledged, but then ignored, internal medicine consultative examiner Dr. Hernandez's opinion with respect to plaintiff's need for more than routine breaks with standing and walking. This argument is also without merit. Dr. Hernandez opined that:

> The number of hours that the claimant could be expected to stand and walk in an eight-hour day is less than six hours with routine breaks and possibly more frequent as much as 15-20 minute breaks every two hours due to diabetic peripheral neuropathy.
>
> The number of hours that the claimant could be expected to sit in an eight-hour day is about six hours with routine breaks.
>
> Assistive device is none.

(Tr. at 281.) To accommodate Dr. Hernandez's restrictions and eliminate the need for more frequent breaks, the ALJ limited plaintiff to only 4 hours of standing and walking with a sit/stand option. (Tr. at 12.) The sit/stand option was included in the hypothetical, and the VE carefully considered the erosion of available jobs resulting from that limitation. (Tr. at 41-42.)

In sum, the ALJ properly credited all of the competent evidence submitted by the consultative examiners, and remand is not warranted on this basis.

---

[5] Plaintiff asserts that Dr. Lampe's opinion is ambiguous, because the "skills necessary" could refer to people skills, the complexity of the work, or "many other meanings." (Dkt. No. 15-1 at 14.) However, Dr. Lampe made clear that "[f]rom a psychiatric point of view, the claimant can relate and interact with supervisors and co-workers...He would not have difficulty dealing with the public." (Tr. at 469.) Accordingly, it can be reasonably inferred that Dr. Lampe was instead referring to the complexity of the work involved.

(3) Whether the ALJ failed to meaningfully consider plaintiff's cardiac condition

Plaintiff further argues that the ALJ's decision fails to discuss plaintiff's heart attack and cardiac condition, and relies on the outdated opinions of medical experts issued before the onset of plaintiff's heart disease. This argument has merit.

At the time of internal medicine consultative examiner Dr. Hernandez's assessment on June 20, 2007, plaintiff had not yet been diagnosed with a cardiac condition. (Tr. at 278-82.) Similarly, the state agency nonexamining physicians' assessments, dated July 12, 2007 and October 15, 2007, also predate the onset of plaintiff's heart disease. (Tr. at 309-15, 360-61.)

Subsequently, on January 13, 2008, plaintiff suffered a heart attack and was admitted to Emmanuel Medical Center in Turlock. (Tr. at 375-77.) That same day, he was transferred on an emergency basis to the catheter laboratory at Doctors Medical Center in Modesto where he underwent primary percutaneous intervention with bare metal stent placement in the mid left anterior descending artery. (Tr. at 400.) He was also found to have severe distal left circumflex disease for which he underwent elective percutaneous intervention with placement of 2 bare metal stents on January 16, 2008. (Tr. at 400.) On January 17, 2008, he was discharged with diagnoses of acute anterior wall ST elevation myocardial infarction (status post successful primary percutaneous intervention); severe distal left circumflex disease (status post successful percutaneous intervention); wall motion abnormality with preserved left ventricular ejection fraction; hypertension; diabetes mellitus; and a history of drug abuse. (Tr. at 400.) Plaintiff was followed by his cardiologist, Dr. Oussama Dagher, through April, 2008. (Tr. at 431-35.)

On June 17, 2008, plaintiff was again admitted to Doctors Medical Center for chest pain. (Tr. at 385.) He underwent cardiac catheterization the next day, which demonstrated an 80% distal left circumflex lesion approximately 10 mm in length. (Tr. at 385.) After additional stenting, he was discharged on June 19, 2008 with diagnoses of chest pain, diabetes

9

mellitus type 2, hypertension, dyslipidemia, congestive heart failure (diastolic compensated); gastroesophageal reflux disease, and coronary artery disease. (Tr. at 385.)

At the March 5, 2009 hearing before the ALJ, plaintiff testified that he experienced pain in his left arm, shoulder, and leg and that it felt like he was having a heart attack. (Tr. at 33.) He further testified to being tired all the time, having to take naps during the day, and that he does not have the endurance to "hang in there for eight hours." (Tr. at 35-37.)

Despite this testimony and the prior medical evidence of his cardiac concerns, the ALJ did not send plaintiff for an additional consultation as to the impact of plaintiff's cardiac condition on his overall functioning. Instead, the ALJ relied solely on the medical evidence predating the onset of his heart problems to determine his physical residual functional capacity. This was error, because, at a minimum, plaintiff's hearing testimony regarding continuing cardiac-related symptoms should have alerted the ALJ to the fact that an updated consultative opinion was required. Social Security Ruling 96-8p requires the ALJ to "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC...In assessing RFC, the [ALJ] must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, at *5. Additionally, although the ALJ identified plaintiff's heart disease as a severe impairment at step two (tr. at 11), the ALJ's decision contains no substantive discussion regarding plaintiff's heart attack and subsequent cardiac treatment.

Defendant contends that, to the extent plaintiff's cardiac condition resulted in fatigue and reduced endurance, those symptoms have already been reasonably accounted for in the RFC assessed by the ALJ. However, the court has no way of discerning whether the ALJ's RFC adequately incorporates any limitations resulting from plaintiff's cardiac condition. The medical records before the ALJ were unclear as to what plaintiff's limitations related to his heart problems were, and the ALJ did not obtain an additional evaluation or otherwise develop the record in this regard. It is clear, however, that the ALJ relied on outdated medical evidence to

determine plaintiff's RFC.

Defendant further argues that the ALJ's failure to discuss plaintiff's cardiac condition is inconsequential, because plaintiff's surgeries were noted to be successful. However, even though the procedures were deemed successful around the time they were performed (see tr. at 385-86, 400-01), plaintiff continued to experience cardiac-related symptoms at the time of the administrative hearing. Furthermore, the evidence later submitted to the Appeals Council, discussed below, ultimately confirmed that plaintiff's cardiac condition was not resolved in the long term.

In light of the above, remand is necessary for an additional consultative examination (with access to plaintiff's prior medical records) and findings as to the impact of plaintiff's cardiac condition on his overall functioning.

(4) Whether the Appeals Council erred by not remanding the case in light of the additional evidence submitted by plaintiff

Here, the evidence submitted to the Appeals Council is not strictly necessary to the court's conclusion that a remand is warranted. Nevertheless, the court addresses the issue in light of the fact that it further highlights the importance of the ALJ obtaining updated medical evidence prior to rendering a decision.

When the Appeals Council denies review, the decision of the ALJ is the final decision. Russell v. Brown, 856 F.2d 81, 83-84 (9th Cir. 1988).[6] However, any additional evidence considered by the Appeals Council in denying the request for review becomes part of the administrative record for review by this court. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); see also Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000) (the court may properly consider the additional materials because the

---

[6] Only if the Appeals Council grants review and then issues a decision on the merits does the Appeals Council's decision become the final decision of the Commissioner. Russell, 856 F.2d at 83-84.

Appeals Council addressed them in the context of denying appellant's request for review).  To justify a remand, the claimant must show that the new evidence is material, i.e. that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).  In this case, plaintiff submitted documentation regarding further emergency room visits and hospitalizations for his cardiac condition to the Appeals Council.

On June 22, 2009, before the ALJ issued her decision, plaintiff presented to the Doctors Medical Center emergency room complaining of numbness and tingling in his left arm and left lower extremity, chest pain the previous day, and some shortness of breath.  (Tr. at 532.)  His cardiac enzymes were elevated to the degree that congestive heart failure was deemed "likely" according to the laboratory reference chart.  (Tr. at 537.)  He improved with medication and was discharged with diagnoses of acute paresthesias, history of diabetes, history of hypertension, and history of cardiac disease with stents.  (Tr. at 533.)

One week after the ALJ issued her decision, on July 22, 2009, plaintiff again presented to the emergency room complaining of chest pain worsening over a period of weeks and more so in the preceding days.  (Tr. at 513.)  He was admitted and underwent cardiac catheterization with angioplasty and stent placement.  (Tr. at 511.)

Subsequently, in August, 2009, plaintiff returned to Doctors Medical Center, reporting that he had experienced chest pressure and chest pain after his first walk.  (Tr. at 484.)  He complained of paroxysmal nocturnal dyspnea, dyspnea on exertion, shortness of breath, and stated that he was not getting any relief with nitroglycerin.  (Tr. at 484.)  Plaintiff was admitted and again underwent catheterization and placement of 3 more stents.  (Tr. at 480, 484.)  The cardiologist noted that plaintiff might benefit from a bypass graft of the left internal mammary artery to the left anterior descending artery if his symptoms did not improve.  (Tr. at 481.)

Finally, on September 1, 2009, plaintiff's cardiologist, Dr. Dagher, submitted a cardiac residual functional capacity questionnaire indicating that plaintiff has marked limitation

of physical activity and is incapable of even "low stress jobs." (Tr. at 542.) It stated that plaintiff's experience of cardiac symptoms is severe enough to frequently interfere with attention and concentration, he could only walk 1 city block without rest, he could sit for more than 2 hours at a time, he could only stand for 30 minutes at a time, he would need to take unscheduled breaks approximately 7-11 times during the day, he could only occasionally lift less than 10 pounds, and he could never twist, stoop/bend, crouch, climb ladders, or climb stairs, among other limitations. (Tr. at 543-45.)

Needless to say, the above-mentioned additional evidence presented to the Appeals Council was material, because it shows that plaintiff's cardiac condition was not resolved at the time of the ALJ's decision, and tends to corroborate plaintiff's hearing testimony. Furthermore, it lends additional support to the notion that further evaluation of plaintiff's cardiac concerns was necessary prior to a final decision by the ALJ. Accordingly, the Appeals Council also erred in not remanding the case in light of the additional evidence submitted.

Defendant argues that the additional evidence should not be considered, because it does not relate to a period on or before the date of the ALJ's hearing decision. In support of this argument, defendant cites to the Commissioner's regulations, which provide that the Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). However, while the regulations may limit review by the Appeals Council, they do not necessarily prevent review by this court. See Ramirez, 8 F.3d at 1452 (considering on appeal an additional report submitted to the Appeals Council by the claimant's treating psychologist after the ALJ's decision). In any event, the additional evidence in this case *does* relate to a period on or before the ALJ's decision. Some of the records actually predate the ALJ's decision. (See e.g. tr. at 532-33, 537). The records that do not predate the ALJ's decision only post-date that decision by less than two months and refer to cardiac conditions and symptoms that manifested well prior to the ALJ's decision. Given that the records are indicative of a

continuing, and possibly worsening, cardiac condition, common sense dictates that the records should be considered as a whole.

Defendant also points out that, according to Dr. Dagher's cardiac residual functional capacity questionnaire, plaintiff's current diagnoses resulted in functional limitations around July 28, 2009 (approximately two weeks after the ALJ's decision). (Tr. at 545.) The basis for the July 28, 2009 date is unclear, especially given plaintiff's cardiac catheterization with angioplasty and stent placement when he was hospitalized on July 22, 2009, his visit to the emergency room on June 22, 2009, as well as plaintiff's prior symptoms and treatment. The date may well be an inadvertent error. On remand, the ALJ will have an opportunity to seek clarification from Dr. Dagher regarding the onset date of plaintiff's functional limitations related to his cardiac condition.[7]

Regardless of the specific onset date, it is readily apparent that neither the ALJ nor the Appeals Council meaningfully considered the impact of plaintiff's cardiac condition. Therefore, as noted above, remand is necessary for an additional consultative examination (with access to plaintiff's prior medical records) and findings as to the onset date and impact of plaintiff's cardiac condition on his overall functioning.[8] Depending on the results of the consultation and the ALJ's findings, the ALJ may also want to conduct a supplemental hearing with vocational expert testimony, if necessary.

\\\\\

---

[7] Generally, in SSI cases, the claimant's onset date and application date will be the same. However, there may be cases where an onset date occurs after the application date, and SSI benefits should be awarded from that later date. Otherwise, a rule would exist that, if one is not disabled as of the application date, that is the end of the matter, and disability established after application, but prior to the finalization of the case, is irrelevant.

[8] It seems obvious from the record that any functional limitations resulting from plaintiff's cardiac condition did not manifest until after December 31, 2006, the date plaintiff was last insured for purposes of DIB. Assessment of plaintiff's cardiac condition, and the onset date of any related functional limitations, is nonetheless essential for purposes of evaluating and determining plaintiff's SSI claim.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment (dkt. no. 15) is granted in part;

2. Defendant's cross-motion for summary judgment (dkt. no. 16) is denied;

3. The case is remanded for further proceedings under sentence four of 42 U.S.C. § 405(g);

4. Judgment is entered for plaintiff; and

5. The Clerk of Court is directed to close this case.

DATED: December 30, 2011

                                      /s/ Gregory G. Hollows
                                UNITED STATES MAGISTRATE JUDGE

GGH/wvr
Cuadras.2142.ss.wpd